# LAW OFFICES OF JILL R. SHELLOW

Telephone:  212.792.4911  /  Fax:  212.792.4946  /  jrs@shellowlaw.com
All correspondence to:  80 Broad Street, Suite 1900, New York, NY 10004

August 24, 2017

**BY ECF AND HAND DELIVERY**
The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
40 Centre Street
New York, NY 10007

  Re: *United States v. Stefan Van der End*, 16 Cr. 453 (RJS)

Dear Judge Sullivan:

  This letter is submitted on behalf of Stefan Van der End, who is scheduled to be sentenced by Your Honor on September 8, 2017.  We respectfully urge Your Honor to adopt the Probation Department's sentencing recommendation of 144 months' incarceration.  The recommended sentence would result in a meaningful punishment and be consistent with sentences imposed on similarly situated defendants in this District.

**Background**

  Stefan Van der End is 48 years old.  He has pleaded guilty and accepted responsibility for operating a sailboat transporting cocaine in international waters.  A citizen of the Netherlands, Mr. Van der End previously served as a private first class in the Dutch military, guarding the West German border as part of a NATO force protecting the frontiers of Western Europe during the Cold War.  He is an avid sailor, a skilled tradesman, and a beloved uncle.

  Mr. Van der End's family is shaken and saddened by his arrest.  His absence has caused "tremendous strain" on his father, a retired steel worker in ill health.  Exh. A.  Mr. Van der End's niece, Lidia Peekel, describes how she missed Mr. Van der End when her mother (his sister) died last year of breast cancer.  *See* Exh. B, Lidia Peekel letter (translated).[1]

---

[1] Letters to Your Honor from Mr. Van der End's family and friends are filed with English translations prepared by EuroNet Language Services, Inc.  *See* www.euronet-languages.com.  Home

The Honorable Richard J. Sullivan
United States District Judge
August 24, 2017
Page 2

While incarcerated in the United States, Mr. Van der End "did everything he could to be in touch with his sister . . . until the last moment." *Id.* Mr. Van der End writes to the Court that he "carr[ies] the heavy burden of family." Exh. A.

Mr. Van der End's family and friends describe him as the person who is always there to help move, assist with house repairs, and offer support in times of difficulty and loss. *See* Letters from Lidia Peekel (Exh. B), Saskia Peekel, another niece (Exh. C), Rudiger Van der End, older brother (Exh. D), and Karin de Bruin, a friend (Exh. E). His niece Lidia describes him as the uncle who "always makes you laugh and he is always trying to make you feel better when something is troubling you." Exh. B. Her sister, Saskia, adds that Mr. Van der will "never say no, and he is there for you immediately." Exh. C.

In 2000, Mr. Van der End's mother drowned. After spending their lives on the water, her death weighed heavily on both Mr. Van der End and his father. *See* Exh. A. Mr. Van der End has remained a source of support for his father; over the past few years, Mr. Van der End painted his father's house and boat. *Id.* Rudiger Van der End writes that his younger brother Stefan "was the one who always helped my father a lot with things . . . without him having to ask." Exh. D.

Mr. Van der End is described as both "respectful and a real gentleman." Exh. E. He enjoys regaling friends with stories from his time driving taxis with his brother (Exh. C), and he is "definitely not lazy and … is always cheerful." Exh. E. Family and friends describe Mr. Van der End as "a hard worker" who "tackles anything, and he helps family and friends." Exh. B. He possesses diverse skills that will enable him to earn a living in the Netherlands when he finishes his prison term. S*ee* Exhs. D, E and F (Letter from Cor and Ineke de Vries Grauwelman); Presentence Report ("PSR") at 19.

**Offense Conduct and Sentencing Guidelines**

<u>Conduct Aboard the Sailboat</u>

In late 2015, Richard Dow, the captain of a sailboat in Grenada, asked Mr. Van der End to help repair and sail his boat from the Caribbean to Canada with a cargo of cocaine. After several months repairing the boat, Mr. Van der End helped load its cargo and sail it north, alternating 12-hour shifts with Captain Dow. As the PSR notes, Mr. Van der End "was not involved in initiating or negotiating the drug deal nor did he have a stake in the

---

addresses have been redacted pursuant to Rule 21.3 of the Southern District's ECF Rules & Instructions and Your Honor's Individual Rules of Practice for Sentencing Proceedings.

**The Honorable Richard J. Sullivan**
**United States District Judge**
August 24, 2017
Page 3

proceeds from the sale of the cocaine.  He was only hired to transport the cocaine."  PSR at 20.

On May 24, 2016, after the boat was tracked and boarded by the United States Coast Guard, Mr. Van der End, Captain Dow and Gerson Pelagio Suarez, another crewmember, were taken into custody.  On May 4, 2017, Mr. Van der End pled guilty to violating and conspiring to violate the Maritime Drug Law Enforcement Act ("MDLEA").

<u>Guidelines Calculation</u>

The PSR calculates Mr. Van der End's advisory Guidelines to be 292 to 365 months' imprisonment.[2]  This calculation is driven largely by the weight of the cocaine aboard the boat, which results in an offense level of 38.  Two levels are added for obstruction of justice because pipes were cut so that the boat would sink before all the cargo could be seized.  The PSR adds two more levels pursuant to U.S.S.G. § 2D1.1(b)(3)(C) because Mr. Van der End was a navigator.  PSR ¶¶ 32-40.  Finally, Mr. Van der End receives a two-level credit for his acceptance of responsibility, yielding a total offense level of 40.  *Id.*

Mr. Van der End does not dispute the drug weight or the two-level enhancement for obstruction of justice.  Nor does Mr. Van der End dispute that he and Captain Dow took turns operating the sailboat and consulting Captain Dow's computer navigation program – facts that other courts have found sufficient to support a navigation enhancement.[3]

Nonetheless, for reasons previously set forth, we respectfully request that Your Honor withhold application of the navigation enhancement to remedy the prejudice to Mr. Van der End caused by the Government's failure timely to disclose statements he reportedly made while in custody about navigating the boat.[4]  *See* Fed. R. Crim. P. 16(d)(2) (vesting district courts with broad discretion to remedy Rule 16 non-compliance).

---

[2] Although the PSR concludes Mr. Van der End is in Criminal History Category I, this conclusion does not reflect his previous narcotics-related convictions in Europe.

[3] For example, the First Circuit affirmed the application of this Guideline to an individual hired to steer a vessel.  *United States v. Guerrero*, 114 F.3d 332, 346 (1st Cir. 1997); *see also United States v. Bautista-Montelongo*, 618 F.3d 464, 466-67 (5th Cir. 2010) (collecting cases).

[4] *See* Dkt. Nos. 92, 106.  Your Honor denied our requests for additional discovery concerning the scope of the Rule 16(a)(1)(A) non-compliance (Dkt. Nos. 98, 107), and we do not seek reconsideration of Your Honor's rulings.  Rather, we respectfully request a specific remedy to cure the prejudice caused by the Government's discovery mistakes.

The Honorable Richard J. Sullivan
**United States District Judge**
August 24, 2017
Page 4

The fact of the discovery mistake not disputed and has been briefed by both parties: mid-way through Mr. Van der End's plea allocution, defense counsel learned for the first time that Mr. Van der End allegedly made statements while in custody about navigating the sailboat. Ex. I (Excerpts from Plea Transcript) at 41-45.  Several days later, after Your Honor accepted the guilty plea, the Government further disclosed that Mr. Van der End made statements while in custody that enabled the Government to access Captain Dow's laptop containing information upon which the Government intended to rely at trial.  *See* Dkt. No. 96 at 4 n.3.[5]

Although the Government has conceded that it will not rely on these statements at sentencing, *id.* at 3, that concession does not remedy the very real prejudice caused by the discovery mistake.  Briefly stated and not to belabor facts that have already been briefed, by withholding Mr. Van der End's statements we – his defense counsel – lacked material information at the time that we counseled Mr. Van der End about the Government's (b)(1)(B) plea offer concerning the risk that two offense levels for the navigation enhancement could be added to his Guidelines. *See* Advisory Committee Notes to Rule 16(a)(1)(A) (the disclosure requirement "contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea.").  Because we did not know about the potential applicability of an enhancement that we would have known about if the purported statements had timely been disclosed, we could not advise Mr. Van der End on the risk that his total offense level might increase to as high as 40, adding approximately five years to his advisory Guidelines range.

 "When the government has failed to comply with Rule 16, the district court has broad discretion to determine what remedial action, if any, is appropriate." *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997).  As we stressed to the Government before this matter was brought to the Court's attention, the reasons for the mistake are not of consequence.  The important issue is that the withholding of Mr. Van der End's statements caused him measurable prejudice.  We respectfully submit that the appropriate remedy for that prejudice is exclusion of the navigation enhancement, which would result in an advisory Guidelines range of 235 to 293 months' imprisonment.

<u>The Probation Department's Recommendation</u>

The PSR recommends a sentence of 144 months' imprisonment.  The Probation Department states that a downward variance is appropriate to avoid unwarranted sentencing

---

[5] Mr. Van der End denies making statements about navigation or providing a password to Captain Dow's laptop, but he does not dispute that he steered the boat and consulted the navigation software.

**The Honorable Richard J. Sullivan**
**United States District Judge**
August 24, 2017
Page 5

disparities.  PSR at 20.  The Probation Department observes that Mr. Van der End "was not involved in initiating or negotiating the drug deal nor did he have a stake in the proceeds from the sale of the cocaine.  He was only hired to transport the cocaine." *Id.*

## The Factors Articulated in 18 U.S.C. § 3553(a) Support a Below-Guidelines Sentence

Section 3553(a) requires Your Honor to impose a sentence that is "sufficient, but not greater than necessary, to accomplish" the goals of sentencing.  For the reasons  below, we urge Your Honor to vary downward and impose the sentence recommended by the Probation Department.

Nature of and Characteristics of the Offense and the Offender

Mr. Van der End is described by those who know him best as a good man – a source of support and comfort, always there when needed.  There is no question that the nature and circumstances of his conduct involved transporting narcotics that cause great harm.  But as the Probation Department observed, Mr. Van der End's role was limited to fixing and operating a sailboat.  While he played an important role that warrants punishment, it bears repeating that Mr. Van der End did not own the drugs and was not to receive a share of the proceeds from their sale.  The land-based drug connections by all accounts belonged to Captain Richard Dow, who hired Mr. Van der End help him repair and handle the sailboat.

Seriousness of the Offense and Deterrence

The Probation Department's recommended sentence – more than a decade in prison outside his homeland – takes into account the seriousness of the offense.  Such a sentence would provide meaningful deterrence to others contemplating similar conduct.

As to specific deterrence, when Mr. Van der End is released from prison he will no longer be a young man capable of alternating 12-hour shifts on grueling ocean-going sailing expeditions.  His age will necessarily inhibit him from recidivism given the physical strength and stamina required of long-distance open water sailing.  Mr. Van der End's days on the high seas are behind him.

Need for Sentencing Parity

The need for sentencing parity further warrants a downward variance.  This Court has recognized "that section 3553(a)(6) requires a district court to consider nationwide sentencing disparities." *Lustig v. United States*, 2010 WL 5094363 at *8 (S.D.N.Y. Dec. 8, 2010) (Sullivan, J.); *see also United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006).  As the

The Honorable Richard J. Sullivan
**United States District Judge**
August 24, 2017
Page 6

PSR explains a sentence of 144 months' incarceration avoids unwarranted sentencing disparities.  *See* PSR at 20.  Offenders in this District are routinely sentenced to prison terms between 12 and 36 months.  *See* Exh. H.[6]

Even taking into consideration Mr. Van der End's prior European convictions, a variance well below the Guidelines range is necessary to avoid an unwarranted disparity.  For example, the Honorable P. Kevin Castel sentenced a defendant similarly situated to Mr. Van der End in *United States v. Cuero*, No. 15-cr-125.  Gabriel Cuero pled guilty to violating the MDLEA by transporting 150-450 kilograms of cocaine.  Mr. Cuero had been involved in 15 to 20 prior maritime drug smuggling attempts, including one that involved 2.8 tons of cocaine.  Gov't Sentencing Letter, Dkt. No. 29 (S.D.N.Y. Jan. 17, 2017).  He also previously served a five-year narcotics-related sentence in Florida.  *See* Sentencing Transcript, Dkt. No. 36 at 21-22, *United States v. Cuero*, No. 15-cr-125 (Mar. 1, 2017).  Judge Castel sentenced Mr. Cuero to 144 months' incarceration (*id.* at 27) – precisely the sentence recommended for Mr. Van der End by the Probation Department.

The two cases highlighted by the Probation Department also illustrate that MDLEA offenders in this District receive sentences well below Mr. Van der End's advisory Guidelines range.  In *United States v. Djeme*, 12-cr-972 (S.D.N.Y.), the defendant was heavily involved in an anticipated ongoing conspiracy to import narcotics into the United States and used firearms in connection with the offense.  *See* Gov't Sentencing Letter, Dkt. No. 35 (Aug. 25, 2014).[7]  The Honorable Richard M. Berman imposed a sentence of 78 months.[8]  The two co-defendants received sentences of 48 and 60 months respectively.

We do not have comprehensive data about MDLEA sentences nationwide because the Sentencing Commission does not maintain statistics for this specific offense.  A review of case law indicates, however, that the Probation Department's recommendation is consistent with sentences imposed around the country.  *See, e.g.*, *United States v. Trinidad*, 839 F.3d 112 (1st Cir. 2016) (defendant accountable for 145 kilogramss of cocaine, received

---

[6] Exhibit H is a table compiled by the Federal Defenders of New York, Inc. that was docketed in advance of a recent MDLEA sentencing before the Honorable Vernon S. Broderick. *See United States v. Lopez*, No. 16-cr-357, Dkt. No. 56-1 (S.D.N.Y. July 28, 2017).

[7] Djeme was prosecuted under the Controlled Substances Act presumably because, unlike the instant case, the defendants conspired to import cocaine into the United States.  Nonetheless, the PSR notes that the offense conduct was similar.  PSR at 20.

[8] The Probation Department also correctly notes (PSR at 20) that in *United States v. Lopez*, The Honorable Valerie E. Caproni sentenced the three defendants each to less than one year in prison.  *United States v. Lopez*, 16-cr-617, Dkt. Nos. 68, 69, 74 (S.D.N.Y.).

**The Honorable Richard J. Sullivan**
**United States District Judge**
August 24, 2017
Page 7

navigation enhancement and sentenced to 108 months); *United States v. Wilchombe*, 838 F.3d 1179 (11th Cir. 2016) (defendants accountable for 860 kilos of marijuana plus cocaine and sentenced to 120 and 135 months); *United States v. Persaud*, 605 F. App'x 791 (11th Cir. 2015) (defendant accountable for about 1,200 kilograms of marijuana and sentenced to 120 and 132 months); *United States v. Ballestas*, 795 F.3d 138, 143 (D.C. Cir. 2015) (defendant aware that organization transported 1,500 kilograms of cocaine sentenced to 64 months).

Finally, whereas MDLEA offenders in this District are routinely permitted to plead to offenses that do not require imposition of a mandatory minimum sentence, *see* Exh. H, Mr. Van der End was never offered such a plea. We respectfully submit that his plea to a (b)(1)(A) offense provides sufficient additional punishment to account for his past. Indeed, in the weeks before trial when the Government refused to re-extend its original plea offer of a charge with a five-year mandatory minimum sentence, the Government explained that its decision was based largely on Mr. Van der End's criminal history.

In short, a sentence well below the Guidelines would avoid an unwarranted sentencing disparity.

**Conclusion**

Mr. Van der End engaged in serious illegal conduct. Transporting narcotics destroys lives. But as the PSR notes, Mr. Van der End was a hired hand. He did not own the drugs. He did not have a stake in their sale. He faces a mandatory minimum sentence of 10 years, and the Probation Department's recommendation of 144 months' incarceration in a foreign jail – in a country within which Mr. Van der End has never committed a crime – constitutes a substantial punishment.

Mr. Van der End's family and friends will be there for him upon his release from prison. It is our hope that he will live to see them again and to put his skills as a tradesman to use supporting his family and helping his friends, as he has throughout his life.

Respectfully submitted,

Jill R. Shellow
Benjamin Silverman
*Attorneys for Stefan Van der End*

cc:     All counsel of record (by ECF)

# EXHIBITS TO DEFENDANT STEFAN VAN DER END'S SENTENCING LETTER

| Exhibit | Description |
|---------|-------------|
| A | Letter, Stefan Van der End |
| B | Letter, Lidia Peekel (niece) |
| C | Letter, Saskia Peekel (niece) |
| D | Letter, Rudiger Van der End (brother) |
| E | Letter, Karen de Bruin (friend) |
| F | Letter, Cor Grauwelman and Ineke de Vries Grauwelman (friend) |
| G | Letter, Sonia Johnson (friend) |
| H | Table of Maritime Drug Law Enforcement Act Sentences in the Southern District of New York filed by the Federal Defenders In *United States v. Lopez*, No. 16-cr-357, Dkt. No. 56-1 (S.D.N.Y. July 28, 2017). |
| I | Excerpts from Transcript of Mr. Van der End's Change of Plea Hearing on May 4, 2017 |

# Exhibit A

August 4th 2017

Stefan van der End
80 East 29th street
Brooklyn, NY 11232
New York

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Centre Street
New York, NY 10007

United States v. Stefan van der End
16-cr-453 (RJS)

Dear Judge Sullivan,

My name is Stefan van der End, 48 years old,
and I am the youngest of three children in my
family.

I am grateful to you, for taking the time to read
a little about me, personally, as you weigh
the issues related to my sentencing.

For the last decade, I have been taking care of my elderly father, who resides in Holland.

For quite some time, I have been the only support for my father, who suffered serious burns and related issues with his legs while working at the steel factories.

Im many ways, Your Honor, I owe him tremendous gratitude for all the great things he did for our family and for me. He also teached me about the sea and sailing. It has been a great part of my life.

My mother passed away in 2000. Her passing, and the circumstances of her drowning, have weighed heavily on my father. My constant friendship and support for him has been his lifeline. My absence has caused tremendous strain on him.

I feel remorse, and regret daily for my inability to care of him at this time.

Last year November, my older sister passed away from cancer, a very big loss of the family.

She has left behind four children. I have been a regular fixture in their lives, which recently has been more important to them, and me. Considering I am the youngest in my family, I am one of the few family members of my generation that have survived. I carry a heavy burden of my family.

I understand the issues surrounding my case, and the errors of my ways.
I cannot express enough words that would sufficiently apologize to my father, this court for it's time, the remainder of my family, and some very good friends, who I have adversely affected due to the current situation.

Your Honor, I know that when I have completed the legal process in the USA, I will be returning to my country to attempt to make up to my family, the loss that they have suffered in my absence, while hoping to spend time again with my father, brother, and my sister's children, and receive their forgiveness.

I would like to thank You, Your Honor, for taking the time to read my brief story and Your accompanying consideration of leniency,

Sincerely,

Stefan van der End

# Exhibit B

City of Dordrecht        Date:  1 July 2017

Name: Lidia Peekel

Address:

Country: The Netherlands

Honorable Richard J. Sullivan

United States District Court

Southern District of New York

40 Centre Street

New York, NY 10007

        Re: United States

Stefan van der End

        16-cr-453 (rjs)

Dear Judge Sullivan,

I am Lidia Peekel, Stefan van der End's niece. I am 36 years old and I have been a professional truck driver for 16 years. Currently, I am not working as I am on maternity leave. For one year, I have been living together with my boyfriend (Ronald Jansen) in Dordrecht.

I have known Stefan van der End for my entire life. He is my favorite uncle. He always makes you laugh and he is always trying to make you feel better when something is troubling you. We are trying to stay in touch as much as possible and I can always count on him; he always has my back, cheers me up, helps out where he is able to; he has always been like that, and not just with me, that's the way he is with everybody. My mother (his sister) died on 20 November 2016 from cancer; Stefan felt terribly bad he could not be here; and I also really missed his moral support at that point. He did everything within his power to be in touch with his sister (my mother) until the last moment, luckily he succeeded in doing so, and I am so relieved about that.

I think Stefan van der End is a sweet, gentle, helpful man who is always ready to help others. He is also very funny and he always makes you laugh.

I have had my own share of problems, but thanks to Stefan I have always been able to recover. He helped me, for instance, when I was moving, and he even helped me fix up the old house. He welcomed me in his house when my power, gas and water service was disconnected. I am still so grateful for that. In 2012, I broke my leg; at the time I could go and visit some family in Spain for a week but there was nobody who could bring me to the airport or pick me up. But once again, Stefan was there for me. I also

consider Stefan to be a hard worker; he tackles anything, and he helps both family and friends. Stefan likes a neat and clean living environment [his place to be neat and clean??]; when he visited me at home, he often asked me: "Isn't it about time to clean up a little bit?"

Currently, I am pregnant with our 1st child (a daughter), and I know that Stefan, if he is able to, will always be there for her and for us; especially to do something fun together or to help out. My boyfriend and I wouldn't want to deprive our daughter of such a great uncle.

Respectfully yours,

Lidia Peekel

blad 1

plaats Dordrecht                     datum 13-7-17

naam Lidia Peekel

Adres ███████████████

land Nederland


Honorable Richard J. Sullivan
United states district court
Southern district of New York
40 centre street
New York NY 10007

re: United

States

Stefan van der End

16-cr-453 (rjs)


Dear judge Sullivan


Ik ben Lidia Peekel het nichtje van Stefan van
der End.
Ik ben 36 jaar en mijn beroep is al 16 jaar
internationaal Vrachtwagenchauffeuse.
Op dit moment werk ik niet ivm Zwangerschap.
Ik woon nu een jaar samen met mn vriend
(Ronald Jansen) in Dordrecht.


Stefan van der End ken ik al mn hele leven.
Hij is mn Lievelings oom.
Ik kan altijd met hem lachen, hij probeert je
altijd op te vrolijken als je ergens mee zit.

z0z

We hebben zoveel mogelijk contact en ik kan altijd bij hem terecht.

Hij steunt me, vrolijkt me op en helpt me waar hij kan, dat heeft hij altijd gedaan en niet alleen voor mij.

Mijn moeder (zijn zus) is 20-11-16 overleden aan kanker.

Erg triest voor Stefan dat hij er niet bij kon zijn maar ik miste zijn steun ook heel erg.

Hij heeft er alles aan gedaan om tot 't laatste moment contact te krijgen met zijn zus (mijn moeder) Gelukkig is dat gelukt en daar ben ik erg blij mee.

Stefan van der End zie ik als een lieve, zachte, behulpzame man die als 't kan voor iedereen klaar staat.

Ook is hij een grote comicus je kan altijd met hem lachen.

Zelf heb ik genoeg problemen gehad maar omdat ik op Stefan kan rekenen lukt het om er altijd weer uit te komen.

Zo heeft hij mij geholpen bij mijn verhuizing inclusief het oude huis opknappen.

Dat ik werd afgesloten met mijn gas, water en licht heeft Stefan mij opgevangen ik was welkom in zijn huis. Daar ben ik hem nog dankbaar voor.

In 2012 brak ik mn been, ik kon toen even een weekje naar familie in Spanje maar niemand kon mij naar 't vliegveld brengen en ophalen. Maar Stefan stond weer voor mij klaar.

blad 2

Ook zie ik Stefan als een harde werker hij pakt alles aan als t om werken gaat is het niet voor zijn familie dan wel voor vrienden.

Stefan houd van een opgeruimde leefomgeving hij zei vaak tegen mij als ie bij mij thuis kwam, Word het niet is tijd dat je dat opruimd of opknapt.

Ik ben nu zwanger van ons 1e kindje (dochtertje), ik weet dat als Stefan kan, zal hij er altijd voor haar maar ook voor ons klaarstaan, en dan voornamelijk de leuke dingen en steun.

Mijn vriend en ik zouden het niet willen dat ons dochtertje zo'n lieve oom moet missen.

Respectfully yours,
Lidia Peekel

# Exhibit C

Date: 16 July 2017

City: Krommenie

Name: Saskia Peekel

Address: ███████

Country: The Netherlands


Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Centre Street
New York, NY 10007


Re: United States v. Stefan van der End

16-cr-453 (Rjs)


Dear Judge Sullivan,

First off, let me introduce myself. My name is Saskia Peekel, I am 31 years old. I live in Krommenie together with my boyfriend Dominic Addens.

Five days a week, I work as a truck driver in the Amsterdam port area. I am transporting sea containers with the clients' cacao products from the terminals back and forth.

I have known Stefan my entire life. He is my uncle. I always considered him my favorite uncle, because each time we saw each other at birthday parties, he was always so cheerful; he was a real comedian and he was always joking around. He is always a lot of fun, a real family man. He is always telling us funny stories about the time he and his brother Ruud were working together as taxi drivers; but if there is something you would like to get off your chest or you feel troubled, he'll listen very patiently and talk things over until you feel a little bit better again. If you ask Stefan to help out, for instance to help you move or to have something fixed, he'll never say no, and he is there for you immediately. I feel terrible that when his sister, i.e. my mother, passed away in November 2016 from cancer. He wasn't able to say goodbye to her.  I would love to be able to give him a big hug and let him know we have his back.


Respectfully yours,

Name: Saskia Peekel

Signature: [illegible signature]

Datum: 16-07-2017

Plaats: Krommenie
naam: Saskia Peekel
adres: ▉▉▉▉▉▉▉
land: Nederland

> Honorable Richard J. Sullivan
> United States District Court
> Southern District of New York
> 40 Centre Street
> New York, NY 10007

RE : United States v. Stefan van der End

16-cr-453 ( Rjs )

Dear Judge Sullivan :

Allereerst zal ik me even voorstellen. Mijn naam is Saskia Peekel , ik ben 31 jaar oud. Ik ben woonachtend in Kommenie samen met mijn vriend Dominic Addens.

Ik werk 5 dagen in de week als vrachtwagen chauffeuse in het havengebied van Amsterdam. Ik vervoer zeecontainers met cacao producten van de klanten naar de terminals en weer terug.

Stefan ken ik al mijn hele leven, Stefan is mijn oom. Ik noemde hem altijd mijn lievelings oom. want altijd als we op verjaardagen weer bij mekaar kwamen was hij vrolijk en kon hij altijd gek doen en grapjes maken. hij is altijd gezellig aanwezig, echt een familie mens. Hij kan altijd leuke verhalen vertellen samen met zijn broer Ruud over het werk als taxi chauffeur wat ze samen vroeger deden, maar als je iets kwijt wilt bij hem of je zit even niet lekker in je vel, kan hij ook erg geduldig luisteren en helpen om je weer wat beter te voelen door een goed gesprek te voeren. Als je aan Stefan vraagt of hij wil helpen met bijvoorbeeld verhuizen of klussen dan zal hij geen nee zeggen en staat hij meteen paraat. Wat ik heel erg vind voor hem is dat zijn zus dus mijn moeder in november 2016 is overleden aan de ziekte Kanker en dat hij geen afscheid van haar heeft kunnen nemen. ik zou hem zo graag even een knuffel willen geven om te laten weten dat we er voor hem zijn.

Respectfully Yours ,

Naam: Saskia Peekel

Handtekening: _S. Peekel_

# Exhibit D

Heemskerk,  25 juli 2017

R. van der End



Nederland


Honorable Richard J. Sullivan

United States District Court

Southern District of New York

40 Centre Street

New York, NY 10007

RE: United States v. Stefan van der End

   16-cr-453 (Rjs)


Dear Judge Sullivan:

My name is Rudiger van der End. I work as a truck driver and live in Heemskerk, The Netherlands. Stefan van der End is my little brother.

I was 6 years old when Stefan was born. So I have known him my entire life. Because he was much younger than us (we had a sister who died last year in November), he quickly learned to become independent. My sister and I did more things together than we did with Stefan. That is because the age difference was too big. Stefan always used to have a lot of friends and especially during the time he played soccer. Stefan also is very handy. He always paid attention to how my father did things.j Stefan also was the one who always helped my father with lots of things. The last couple of years Stefan helped my father without him having to ask. That is when he painted my father's house and his boat. Also, when there was work in the garden, he was always ready to help. For a while, Stefan lived close to a marina. In  those days, it was easy to see how much Stefan enjoyed life and how helpful he was. There were plenty of people who did not know much about their boats and they would always come to Stefan to ask his advice. That was very nice of him. And showed that Stefan is always happy and willing to help other people. All in all, he is a great guy and I am glad he is my brother.

                                        Respectfully Yours,

                                        Ruud van der End

Heemskerk,  25 juli 2017

R. van der End



Nederland


Honorable Richard J. Sullivan

United States District Court

Southern District of New York

40 Centre Street

New York, NY 10007

RE: United States v. Stefan van der End

    16-cr-453 (Rjs)


Dear Judge Sullivan:

Mijn naam is Rudiger van der End. Ik ben werkzaam als vrachtwagenchauffeur en ben woonachtig in Heemskerk, Nederland. Stefan van der End is mijn broertje.

Ik was 6 jaar op het moment dat Stefan werd geboren. Ik ken hem dus mijn hele leven. Aangezien hij toch een stuk jonger was als ons (we hadden nog een zus, die is vorig jaar november overleden) moest hij best al snel een beetje zelfstandig zijn. Wij, mijn zus en ik, deden meer dingen met elkaar als dat wij met Stefan deden. Daarvoor was het leeftijdsverschil te groot. Stefan had altijd een hoop vrienden vroeger en zeker in de tijd dat hij ook voetbalde. Stefan is ook een handige jongen. Hij lette altijd goed op bij mijn vader hoe hij dingen deed. Stefan was ook degene die mijn vader altijd heeft geholpen met van alles. De laatste jaren hielp Stefan mijn vader al zonder dat hij het hoefde te vragen. Zo heeft hij het huis en de boot van mijn vader geschilderd. Ook als het nodig was om de tuin te doen stond Stefan altijd klaar. Stefan heeft ook nog een tijd bij een jachthaven gewoond. In die tijd kon je goed zien hoe levenslustig en behulpzaam Stefan was. Er waren zat mensen die niet alles wisten over hun boot en dan kwamen ze bij Stefan om raad vragen. Dat was mooi om te zien. Hier kon je ook goed zien dat Stefan altijd klaarstaat om andere mensen te helpen. Al met al is het een prachtgozer en ik ben blij dat hij mijn broertje is.


                                  Respectfully Yours,

                                    Ruud van der End

# Exhibit E

[handwritten letter]

Beverwijk 07/13/2017
Karin de Bruin

The Netherlands

Dear Judge Sullivan,
My name is Karin de Bruin; I was, and now I am again, Stefan van der End's girlfriend; I became acquainted with him on 03/05/2008, I was there with my former boyfriend, Tvan Heumen, he was also one of Stef's friends, they met each other at a dinner, my friend Toon was seriously ill, he had lung cancer, and he and Toon got along very well, Stef stopped by every week to see how he was doing and that is how we got to know each other, he was there for us every single week, he was so helpful during those dark days, we could always call him if need be, that's the way he is, you can count on him, if my friend needed him for something, he was there for him, I respect him enormously for that, he was always ready to help out, if one was moving or doing renovations, all you had to do was give him a call and he was there, and I've only known Mr. van der End for 9 years and he always helped me out in difficult times, him and I were both taxi drivers at the time, but due to my friend's illness I had to give that up, and Stef is somebody you can rely on, he was also there for the employees he employed, when he was an independent contractor, he provided good service, he was verbally praised by others about how well he handled disabled children, he got along with children in general, and he is the way he is, just Stef, if you need him, he'll be there for you; following is a small example: my friend Toon asked me to marry him so I could keep on living in that house, that was great, but every day up to that day I called Stef and finally I let him know when my husband died, and he was there for me again, and after he [sic: Toon] died, he [sic: Stef] came to see me and he never left, he was, and still is, a good friend to me, like now when one of our close acquaintances died yesterday, we were both so sad about it, but at least, he knows about it. I am also sending this letter to Judge Richard J. Sullivan.

/was signed/ K de Bruin

Beverwijk    13.07.2017.
Karin de bruin.
████████████████
Nederland.

# Dear Judge Sullivan.

Mijn naam is Karin de bruin ik was en ben weer de
vriendin van Stefan van der end, ik heb hem mogen
leren kennen op 05-03.2008 ik was daar met my toenmalige
vriend, genaamd Tuan Heunen was ook stef zijn vriend
ze kwamen mekaar tegen tijdens een elentje mijn vriend
toon was zeer ernstig ziek hij leed aan longkanker en
hij en toon vonden mekaar en Stef kwam elke week
langs om te kijken hoe het met hem ging zo heeft hij my
ook leren kennen elke week was ie dr voor ons zo
behulpzaam in deze zware tijd als dr wat was
konden we hem bellen zo is hij wel je kan op hem rekenen
als mijn vriend hem nodig had voor iets was ie dr voor hem
en waardeer ik enorm in hem zo behulpzaam moest ie
dr iemand verhuizen verbouwen hij was dr je hoefde
maar te bellen en hij kwam en ik ken Meneer vander End
pas 9 jaar en hij is me altijd bij gestaan, in moeilijke
tijden hij was taxi chauffeur ik ook toen de tijd
Maar de ziekte van mijn vriend moest ik het op geven
en Stef is iemand waar je op kan bouwen ook voor zijn
werknemers die hij in dienst had dat hij voor zich
zelf werkte als zipper leverde overal goed werk af en
werd mondeling genoemd bij anderen zo goed is hij met
gehandicapten kinderen is het ook een topper kan

goed met kinderen overweg en hij is zoals je is
gewoon Stef heb je hem nodig hij is dr voor je,
Klein voorbeeld Mijn vriend genaamd Toon heeft
mij ten huwlijk gevraagd en zodat ik in het
huis kon blijven wonen geweldig wat dat Maar
elke dag die aanloop tot die dag heb ik Stef gebeld
en hem laten weten dat Mijn Man was overleden
daar was hij dr ook weer voor Me en na zijn
overlijden kwam ie na een half jaar naar Me toe
en is nooit Meer weggegaan ik had en na nog
steeds een goede vriend aan hem, zoals nu onze
Goede kennis is gisteren overleden deed hem
Zeer zowel Mij als hem Maar goed hij weet dr
vanaf ik stuur deze brief ook naar Rechter
R. J. Sullivan.

# Exhibit F

Honorable Richard J. Sulivan
United States District Court
Southern District of New York
40 Centre Street
New York, NY 10007

Re United States V. Stefan van der End
16-cr-453 (rjs)

We are Cor Grauwelman and Ineke de Vries Grauwelman. We live in Beverwijk, where Stefan also used to live. I (Ineke) have been working at a nursing home for almost 30 years. I am 53 years old. I met Stefan approximately 20 to 25 years ago in the bar where I was working for fun. Even at that time, Stefan was my husband Cor's best friend, they were both working at A.H. Groothandel. They were spending all their time together. They were also working together for the same taxi company, but that was before I got to know them. Every Sunday, they went to play squash together and afterwards they would come to the bar for a grilled cheese sandwich and a beer. I can tell you that Stefan is definitely not lazy and he is always cheerful. He is well-mannered and knows how to behave. He is respectful and a real gentleman. He is always ready to help everybody out when it is needed, whether to help somebody move or help with their renovations or installing laminate, you name it! We have moved a couple of times ourselves, and that is when you find out who your real friends are; out of the 5 of them, 1 showed up, that one was Stefan. Even when my mother moved, he came to help us. If you invited him for dinner, you had to make sure there was enough food, it was a pleasure to cook for him. He would always bring me something, even though I said that that was not necessary. A few times, he had a girlfriend, but unfortunately, that didn't go very well. Each time, he found a lady who was already in debt or who was running up new debts. Due to those circumstances he got into the mess he is in now. It is extremely difficult here to start a new life once you have been convicted.
You get a one-way ticket home, and then you are on your own. That iss how he ended up in this nightmare.
He is a hard worker if he is given a chance to work, but if your girlfriend is squandering all your money, you'll never get out of that mess. He even became an independent contractor in order to get work and earn money and get a bank account. I am hoping he can serve his sentence, or at least part of it, here in the Netherlands, so that we can go and visit him. In the meantime, his father is more than 80 years old and it is impossible for him, as it is for us, to travel all the way to New York and give him a hug. We truly miss him a lot. Very recently, he lost his sister to cancer, and unfortunately, he never was able to see her again. I really hope he still gets to hug his father and brother. Conclusion: Stefan is a cheerful, nice, kind, chivalrous and caring hard worker who got into this trouble because he was hanging out with the wrong crowd.

Following is a letter written by Cor Grauwelman.
Stefan and I have been friends for more than 30 years. I know Stefan to be a very good and sociable man, and he is one of my ex-colleagues. You can always call on Stefan and he doesn't want anything in return. Some examples of this are his helping out during the various moves I had in my life; he was always there for me. A few years ago, before I got married to Ineke, my father passed away. At that time, I did not possess a car and Stefan lent me his car for the day. I did live somewhere else then, not in Beverwijk, and if I wanted to come to Beverwijk for the weekend, he came to pick me up. That's what I call a real friend. I know about another friend of Stefan's who wanted to start up his own company and

Stefan selflessly worked for him for a few months without being paid; even now, he still needs to be compensated for that. So these are the things that got him into trouble, he is just too nice and sociable. Stefan has a lot of positive characteristics but after knowing him for so long, you become used to those. We don't support what he has done, but he got into trouble due to circumstances, just to earn some money.

Kind regards,
Cor Grauwelman and Ineke de Vries Grauwelman

████████████████████

Nederland
0251821415 of 0623189457
inekedvries@gmail.com
corgrauwelman@gmail.com


Honorable Richard J. Sulivan
United States District Court
Southern District of New York
40 Centre Street
New York, ny 10007


re United States V. Stefan van der End
16-cr-453 (rjs)


Wij zijn Cor Grauwelman en Ineke de vries Grauwelman.Wij wonen in Beverwijk alwaar Stefan ook woonde.
Ik (Ineke) ben werkzaam in de bejaardenzorg nu bijna 30 jaar.Ik ben 53 jaar oud.
Ik heb Stefan leren kennen ongeveer 20/25 jaar geleden in het cafe waar ik toen extra werkte als hobby.
Stfan was toen al de beste vriend van mijn man Cor,ze werkte toen samen bij A.H groothandel. Als je de 1 zag kwam de andere er achter aan. ze werkte ook samen bij een taxibedrijf maar dat was voor ik ze leerde kennen.Zondags gingen ze altijd samen squasen en kwamen daarna naar het cafe voor een tosti en een biertje.Ik kan u zeggen dat Stefan niet lui is en altijd vrolijk is.Hij is een keurig op gevoede jongen die weet weet hoe het moet.Heeft respect en is erg galant.Hij staat voor iedereen klaar als het nodig is of het nu is om te helpen verhuizen of verbouwen of laminaat leggen het maakt hem niks uit.Wij zijn een paar keer verhuisd dan leer je je vrienden kennen van de 5 kwam er 1 opdagen en dat was Stefan. Zelfs toen mijn moeder ging verhuizen was hij aanwezig.
Als hij bij je komt eten dan moet je echt genoeg maken want het is een genot om voor hem te koken .Hij neemt ook altijd wat voor me mee zelfs als ik zeg dat hoeft niet.
Hij heeft een paar keer een vriendin gehad wat niet goed afliep helaas. hij treft iedere keer een dame die schulden heeft of maakt.
Door deze omstandigheden is hij dan ook in de problemen geraakt waarin hij zich nu bevind.Het is hier erg moeilijk om weer een bestaan op te bouwen als je een keer veroordeeld geweest bent. Je krijgt enkele reis naar huis en dan mag je het zelf uitzoeken. Hierdoor is hij in deze nachtmerrie terechtgekomen.
Het is een harde werker als hij de kans krijgt maar als je vrienden het geld over de balk gooit dan kom je er nooit uit. Hij is zelfs zzper geworden om te werken en geld te verdienen en om een bankrekening te krijgen.
Ik hoop dat hij zijn straf of een deel van zijn straf in Nederland uit kan zitten zodat wij hem op kunnen zoeken. Zijn vader is inmiddels ook over de 80 jaar en het het is voor ons en zijn vader een onmogelijke reis om helemaal naar New York te komen zodat wij hem kunnen omhelzen.Wij missen hem heel erg. Pas geleden is hij zijn zuster verloren aan kanker die heeft hij niet meer kunnen zien helaas, Ik hoop dat hij zijn vader en broer nog wel kan omarmen.
Conclusie Stefan is een vrolijke vriendelijke hartelijke galante en zorgzame harde werker die door de verkeerde vrienden en vriendinnen in dit is beland.

Hier een brief van Cor Grauwelman,
Al ruim 30 jaar zijn Stefan en ik vrienden. Ik ken Stefan als een zeer goede en sociale man en ex collega.
Stefan heeft het voordeel dat je ten alle tijd een beroep op hem kan doen zonder dat hij er iets voor terug wil hebben, enkele voorbeelden hiervan zijn meerdere verhuizingen die ik in mijn leven heb gehad en hij er altijd voor mij was. Enkele jaren geleden toen ik nog niet met Ineke getrouwd was is mijn vader overleden. ik had op dat moment geen auto en Stefan bood zijn auto aan voor die dag. Ik woonde toen niet in Beverwijk maar elders en als ik het weekend naar beverwijk wou dan kwam hij me halen. Dat is een vriend.
Wat ik weet over een andere vriend van Stefan is dat die persoon een eigen bedrijf wilde opstarten en dat Stefan daar enkele maanden belangeloos zich voor heeft ingezet, de verdiensten moet hij nu nog ontvangen.Dus dit zijn dingen wat hem in de problemen heeft gebracht hij is veel te aardig en sociaal.
Er zijn veel positieve dingen aan Stefan maar omdat je hem al zolang kent word het gewoon.
Wat hij heeft gedaan staan wij niet achter maar is door omstandigheden gebeurt om toch geld te verdienen.


Vriendelijk groet Cor Grauwelman en Ineke de Vries Grauwelman

# Exhibit G

Sonia T. Johnson

███████████

St. George's, Grenada, W.I.

July 30, 2017

Honorable Richard J. Sullivan,
United States District Court,
Southern District of New York,
40 Centre Street,
New York, NY  10007.

RE: <u>United States v. Stefan Van der End</u>
16-cr-453 (RJS)

Dear Judge Sullivan:

I am a citizen of Grenada by birth.  I am a medical doctor by profession.  I studied at University of South Carolina where I obtained a Bachelor of Science degree in psychology and pre-med requirements.  I attended St. George's University here in Grenada and did my clinical rotations in the UK.  I returned to the UK in 2005 and specialized in Sport & Exercise Medicine.  I have worked with the Government of Grenada for 17 years and from this year started in an academic capacity as a clinical tutor at the St. George's University. I play the sport of lawn tennis.  I was national champion of my country and the Windward Islands before going to University of South Carolina.  I got to number two in singles in the state of South Carolina. I continue to play tennis which is an important part of my life. I have worked with National Sporting teams with the aim to prevent injuries and as a sports doctor.  In 2014 I was nominated to be on the Commonwealth Games Medical Commission for the Commonwealth Games in Glasgow and I recently returned from The Bahamas which hosted the Youth Commonwealth Games continuing in the same capacity.  I continue to be involved with athletes and their education to be great sportspersons and healthy people.

In September of 2015 Stefan and I started a relationship. I knew him before on his previous visits to Grenada but only as a friend.  We kept lightly in touch via skype and then when he returned in 2015 it was clear that we had a connection.  We cared deeply for each other and we got along well.  He has a boyishness that is very endearing and refreshing, allowing for many light and happy moments.

To give an understanding of the generous and kind person Stefan is, I would like to take this moment to relay an experience that stood out among many similar ones.   We have a mutual friend whose wife was fighting cancer and it had spread so the end was inevitable (she has since passed on).  Stefan made it his duty to visit and help out on a regular basis.  He got flowers from my garden and brought them to her on weekends, and when her husband had to work he volunteered to stay with her.  He drilled me on all the medical aspects of the disease so that he can be better informed.  Even though it was difficult for him to watch, he knew that the assistance and support would go a long way so he did it with all his heart and soul. His kindness and generosity of spirit was appreciated by her family, friends and community members.

With this picture of a gentle and caring person who is loved dearly and the charge of transportation of drugs for which he is presented before you, I humbly implore your consideration for leniency in your sentencing.


I thank you for your time and consideration.

Respectfully yours,


_____.
Dr. Sonia T. Johnson B.Sc., M.D., M.Sc.

# Exhibit H

## Sentences Imposed by SDNY District Court Judges

| Defendant | Docket No. | Sentence | SR |
|---|---|---|---|
| Javier Joaquin Alarcon Prado | 15cr455 (JSR) | 24 mos | 3 yrs |
| Luis Armando Valencia Bautista | 15cr455 (JSR) | 25 mos | 3 yrs |
| Hector Valencia Bautista | 15cr455 (JSR) | 26 mos | 3 yrs |
| Mario Delgado Antonio Franco | 15cr731 (KMW) | 22 mos* | 3 yrs |
| Arry Etiel Correa Bolanos | 15cr731 (KMW) | 24 mos | 3 yrs |
| Jose Andres Castillo Palacio | 15cr731 (KMW) | 25 mos | 3 yrs |
| Yimmi Jafet  Montano Preciado | 15cr874 (CM) | 48 mos | 0 yrs |
| Nestor Rodriguez Paredes | 15cr874 (CM) | 32 mos | 0 yrs |
| Armando Ramos Valiente | 15cr874 (CM) | 19 mos* | 0 yrs |
| Oscar Marquez Riascos | 16cr277 (GBD) | 16 mos | 0 yrs |
| Eider Sinistera Solis | 16cr277 (GBD) | 18 mos | 0 yrs |
| Ivan Rafael Bailon Hernandez | 16cr277 (GBD) | 19 mos | 0 yrs |
| Bany Concepcion Lopez Eguizabal | 16cr277 (GBD) | 20 mos | 0 yrs |
| Dagoberto Cuero | 16cr316 (LGS) | 15 mos* | 3 yrs |
| Francisco Quinones Betancurt | 16cr316 (LGS) | 24 mos | 3 yrs |
| Jesus Miguel Gallardo Ochoa | 16cr316 (LGS) | 15 mos* | 3 yrs |
| Pedro Ernesto Mina Olivo | 16cr614 (ER) | 18 mos | 3 yrs |
| Jhonny Javier Rodriguez Jimenez | 16cr614 (ER) | 19 mos | 3 yrs |
| Kleber Felipe Mera Estupian | 16cr614 (ER) | 20 mos | 3 yrs |
| Johnny Javier Cusme Lopez | 16cr617 (VEC) | 8 mos* | 3 yrs |
| Jhefferson Escobar Montano | 16cr617 (VEC) | 8 mos* | 3 yrs |
| Nelson Antonio Ortiz Vite | 16cr617 (VEC) | 8 mos* | 3 yrs |

*Time Served

# Exhibit I

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                              16 CR 453 (RJS)

5  STEFAN VAN DER END,

6              Defendant.

7  ------------------------------x

                                      New York, N.Y.
8                                     May 4, 2017
9                                     4:15 p.m.

10

Before:
11
                    HON. RICHARD J. SULLIVAN,
12
                                      District Judge
13

14                        APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    JASON M. SWERGOLD
17  AMANDA LEIGH HOULE
    EDWARD YOUNG KYU KIM
18       Assistant United States Attorneys

19  PATEL & SHELLOW LLP
         Attorneys for Defendant
20  BY:  JILL R. SHELLOW

21  ALSO PRESENT:  PETER CALABRESE, PARALEGAL, UNITED STATES
    ATTORNEY'S OFFICE
22

23

24

25

1    hearing or that any of the Coast Guard witnesses would be

2    required for any such resolution of that issue.

3          THE COURT:  I don't know.  If it is going to require

4    that, I guess I'd just assume do it next week since I blocked

5    off the whole week.

6          Do any of the Coast Guard witnesses have any testimony

7    related to the navigator point?

8          MR. SWERGOLD:  They do, your Honor, which includes

9    some statements made by Mr. Van Der End.  I should mention also

10   that there is some relevant conduct that we would seek to prove

11   that includes conduct by this defendant that proceeded for many

12   months before they left in May of 2016 to attempt to bring this

13   cocaine up to Canada.

14         THE COURT:  Why is that relevant conduct?  What do you

15   mean?

16         MR. SWERGOLD:  It's not in the indictment.  The

17   indictment just charges a conspiracy in May 2016.  This isn't

18   the first trip.  They tried earlier, some combination of the

19   conspirators in this case.

20         There will be testimony about the defendant's

21   involvement in that, about his involvement in unloading and

22   reloading the drugs.  So this is all stuff that the government

23   is going to want to rely on at sentencing because we think it

24   absolutely goes towards the arguments that we want to be

25   making.

1          THE COURT:  That's not in the Pimentel I don't think.

2     One of the issues I'd like to nail down is whether we're going

3     to be having a hearing.  If so, whether it should be next week

4     to take advantage of the fact that witness are here or whether

5     it can or should be later.

6          You suggested that the navigation point, the

7     enhancement for being a navigator, is something that there

8     would be at least some relevant testimony from the Coast Guard

9     witnesses.  If that's the case, then I think we should probably

10    go forward on Monday with that testimony, since the witnesses

11    are here.

12         MS. SHELLOW:  Your Honor, if the government would

13    proffer what that testimony is going to be.  I don't know that

14    we would necessarily be contesting it.  I am curious about what

15    statements of Mr. Van Der End the government is relying on

16    because I do not believe that any statements of my client have

17    been produced to us.

18         THE COURT:  I don't know whether they have or not.  I

19    think you said statements made to Coast Guard officers.

20         Isn't that what you said, Mr. Swergold?

21         MR. SWERGOLD:  Yes, your Honor.  It wasn't in the form

22    of questioning.  It was while they were at sea on the cutter,

23    statements the defendant was making regarding his ability to

24    navigate by stars and wind and notice areas in the ocean so

25    that he was able to tell where they were.

1          THE COURT:  Did you disclose that to the defense?

2          MR. SWERGOLD:  No.  We haven't disclosed it.  We just

3     learned it in speaking with our witnesses.

4          THE COURT:  Generally statements of a defendant are

5     supposed to be disclosed.  Right?

6          MR. SWERGOLD:  You're right, your Honor.  We should

7     have disclosed it earlier.  Obviously it would come under 3500.

8     I understand they should have been disclosed earlier.

9          MS. SHELLOW:  Statements of the defendant are not 3500

10    material.

11         MR. SWERGOLD:  I just said that we should have

12    disclosed it earlier after learning of it.

13         THE COURT:  Again, so there are witnesses who are here

14    now or soon to be here who have testimony about statements made

15    by Mr. Van Der End?

16         MR. SWERGOLD:  Your Honor, we would not offer the

17    statements that he made on the cutter.  What I would say is

18    that the Coast Guard witnesses' testimony would absolutely be

19    critical to the obstruction enhancement, and also we have a

20    cooperating witness who would testify about facts that would be

21    relevant for sentencing.

22         THE COURT:  That witness I assume can testify any

23    time.

24         MR. SWERGOLD:  That's correct.  The Coast Guard

25    witnesses will corroborate -- to the extent that defendants are

 1    going to challenge things that the cooperating witness is

 2    saying, the government would seek to corroborate his testimony

 3    through other evidence, documents or testimony, that could be

 4    presented at another time.

 5              But for the Coast Guard witnesses, it may make sense

 6    to just take their testimony now, and then we can argue about

 7    the corroboration later after the cooperating witnesses were to

 8    testify.

 9              THE COURT:  That's with respect to the obstruction?

10              MR. SWERGOLD:  Yes.

11              THE COURT:  Are you challenging the obstruction part,

12    Ms. Shellow?

13              MS. SHELLOW:  No, I'm not.

14              THE COURT:  I'm not sure what the testimony of the

15    Coast Guard witnesses would be relevant to then if that's not

16    being contested.

17              MS. SHELLOW:  I'd like a proffer as to what it is they

18    would testify to, your Honor.

19              MR. SWERGOLD:  Your Honor, as we said, we're not going

20    to offer the statement on the navigator.  We would get that

21    evidence in through other witnesses, through another witness.

22              So, if they're not going to contest the obstruction

23    points, then we don't need the Coast Guard witnesses for that.

24    Again, they would corroborate other evidence and of our

25    cooperating witnesses' testimony.

1          MS. SHELLOW:  Your Honor, the government should be

2    precluded from in any way using statements of my client that

3    have not been produced to us, whether through a Coast Guard

4    witness or any other witness.

5          THE COURT:  I'm past that though.  I'm trying to

6    figure out if there's any need for us to have a Fatico hearing

7    next week with the witnesses who are here or who are likely to

8    be here but are likely to be unavailable later.  That's really

9    what I'm trying to figure out.

10         It's not clear to me that they are.  It sounds like

11   what you're saying, Mr. Swergold, is that they might have

12   things that corroborate a cooperating witness.  About what, I'm

13   not sure.  We're kind of groping to figure out what relevant

14   testimony they have that would justify doing this next week.

15         MR. SWERGOLD:  Your Honor, assuming that Mr. Suarez is

16   also going to plead guilty after this and takes the same

17   position with respect to the obstruction points, then we do not

18   need the Coast Guard witnesses for a hearing next week on that

19   issue.

20         THE COURT:  On any issue.

21         MR. SWERGOLD:  On any issue.  That's right,

22   your Honor.

23         THE COURT:  Is there anything else being disputed with

24   respect to the guidelines calculation in the Pimentel letter?

25         MS. SHELLOW:  No.